IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 22, 2012

# IN THE MATTER OF CHRISTOPHER P., KOBEY P., BLAKE H. AND MYLES H.[1]

**Appeal from the Juvenile Court for Montgomery County**
**No. SJ12797      Ray Grimes, Judge**

**No. M2012-01348-COA-R3-PT - Filed December 6, 2012**

Father's parental rights to two children were terminated as a result of his confinement in a correctional facility for more than ten years; he appeals, contending that there was insufficient evidence to support the holding that termination of his parental rights would serve the best interest of the children. We disagree and affirm the decision terminating his rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., and ANDY D. BENNETT, JJ., joined.

R. Lance Miller, Clarksville, Tennessee, for the Appellant, Christopher R. P.

Robert E. Cooper, Jr., Attorney General and Reporter, and Rebekah A. Baker, Assistant Attorney General, for the Appellee, Tennessee Department of Children's Services.

Erin S. Poland, Clarksville, Tennessee, Guardian Ad Litem on behalf of Christopher P., Kobey P., Blake H., and Myles H.

## OPINION

In June 2008, the Tennessee Department of Children's Services ("DCS") was notified that Leslie H., the mother of Christopher P., Kobey P., and Blake H., was incarcerated and that the children were staying with a neighbor; DCS discovered that Christopher R. P., the

---

[1] This Court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

father of Christopher P. and Kobey P.; and Erasure O., the father of Blake H., were also incarcerated. After interviewing the children's grandmother and neighbors DCS determined that there was no alternate placement available and filed a petition in Montgomery County Juvenile Court seeking temporary custody of the children. On August 21, the children were adjudicated dependent and neglected and placed in a foster home.[2] At some point the children were returned to their mother. On June 21, 2010, DCS filed a petition seeking a determination that the children were dependent and neglected; they were adjudicated to be so by order entered August 17 and again placed in foster care.

On December 22, 2010, the Guardian Ad Litem filed a petition to terminate the parental rights of the parents of each child. Trial was held on July 29 and September 16, 2011, and January 13 and March 2, 2012; by order entered March 12, the court terminated each parent's respective parental rights. This appeal involves only the termination of Christopher R. P.'s ("Father") parental rights to Christopher P. and Kobey P.

Father's rights were terminated in accordance with Tenn. Code Ann. § 36-1-113(g)(6), which provides that a proceeding to terminate parental rights may be initiated where:

> The parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court.

The order terminating Father's parental rights stated:

> The testimony of [Father] and the certified copies of his judgment form show that [Father] was sentenced to twelve (12) years in prison on March 14th, 2005 . . . The only requirements are that the parent has to have been sentenced to ten (10) years or more, and the children have to have been under eight (8) years of age at the time the parent was sentenced. The possibility of parole for early release is irrelevant.
>
> Based on the above, this Court finds by clear and convincing evidence that [Father's] parental rights may be terminated based on his sentence of twelve (12) years.

---

[2] Myles H., the son of Leslie H. and Erasure O., was born March 25, 2009 and placed in DCS custody upon his birth; he was the subject of a separate dependent and neglect proceeding.

Father does not contest that a ground for termination has been established due to his incarceration; he contends that termination of his parental rights is not in the best interest of the children.[3]

## DISCUSSION

Parental termination proceedings are governed by statute in Tennessee. *See* Tenn. Code Ann. § 36-1-113. A party seeking to terminate the parental rights of a biological parent must prove at least one of the statutory grounds for termination by clear and convincing evidence.[4] Tenn. Code Ann. § 36-1-113(c)(1); *In re D.L.B.*, 118 S.W.3d 360, 366-67 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). Secondly, the party must prove, also by clear and convincing evidence, that termination of the parental rights of the biological parent is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2). In accordance with Tenn. R. App. P. 13(d), this Court reviews the trial court's findings of fact *de novo* with a presumption of correctness unless the evidence preponderates otherwise. In cases of parental termination, we determine whether the facts, either as found by the trial court, or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *See Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In re Tiffany B.*, 228 S.W.3d 148, 156 (Tenn. Ct. App. 2007). Whether a ground for termination has been proven by clear and convincing evidence is a question of law, which we review *de novo*, with no presumption of correctness. *In re S.H.*, No. M2007-01718-COA-R3-PT, 2008 WL 1901118, at *4 (Tenn. Ct. App. Apr. 30, 2008) (citing *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007); *In re Valentine*, 79 S.W.3d at 548).

Our legislature has set out a list of factors for the courts to follow in determining the child's best interest at Tenn. Code Ann. § 36-1-113(i):

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

---

[3] Even though Father does not contest the ground for termination, we find that the record clearly supports the finding that he was convicted of an offense and sentenced to more than 10 years' incarceration and, at the time of his conviction, the children were under the age of eight.

[4] Because of the fundamental rights involved and the harsh effect of terminating one's parental rights, courts require a higher standard of proof in deciding termination cases. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *Matter of M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

The foregoing list is not exhaustive, and the statute does not require every factor to appear before a court can find that termination is in a child's best interest. *See In re S.L.A.*, 223 S.W.3d 295, 301 (Tenn. Ct. App. 2006) (citing *State of Tennessee Dep't of Children's Servs. v. T.S.W.*, No. M2001-01735-COA-R3-CV, 2002 WL 970434 at *3 (Tenn. Ct. App. May 10, 2002); *In re I.C.G.*, No. E2006-00746-COA-R3-PT, 2006 WL 3077510 at *4 (Tenn. Ct. App. Oct. 31, 2006)).

The trial court based its holding that termination of Father's parental rights was in the best interest of the children largely on the fact that, because Father had been incarcerated for most of the children's lives, he had no relationship with them. Tenn. Code Ann. § 36-1-113(i)(4). In its discussion of the children's best interest, the court stated:

The Court may also consider other factors when determining if termination of parental rights is in the children's best interest. [Father's] lengthy incarceration, which has prevented him from maintaining a relationship with the children, makes it in the best interest of [Children] that his parental rights be terminated. He has been incarcerated for almost seven (7) years, and has not had any visitation with the children since his incarceration, as of this date.

We don't know when [Father] will be released, yet even if he were released today, he would still need to address the issues that led to his incarceration, establish a home and obtain employment that would allow him to support them. In addition, he would have to rebuild his relationship with them, and these children have already been in foster care far too long. Based on these factors, . . . , the Court concludes that termination of . . . , and [Father's] parental rights is in the children's best interest.[5]

It is clear that the disabilities caused by and inherent in Father's incarceration have a significant impact on the determination of the children's best interest. His incarceration - along with that of the children's mother and the father of the children's half-brothers - was the reason that the children initially were placed into DCS custody. As noted by the trial court, he has been continuously incarcerated since that time; as a result, he has not had any contact with the children.[6] *See* Tenn. Code Ann. § 36-1-113(i)(3). Since he has not had contact with the children, he has been unable to establish a relationship with them. *See* Tenn. Code Ann. § 36-1-113(i)(4).

Father's incarceration also means that he does not have the immediate opportunity to make "an adjustment of circumstance", i.e., to create a home for himself and the children or to be in contact with the children. Tenn. Code Ann. § 36-1-113(i)(1). Moreover, the

---

[5] Immediately preceding the portion of the order quoted, the court held, *inter alia*, that each parent had "failed to make an adjustment of circumstances, conduct, or conditions as to make it safe and in the children's best interest to return home" and that Christopher P. "ha[d] not maintained regular visitation or other contact with the children."

[6] Father testified as follows:

Q. [Father], how much, if any, contact have you had with your children since you've been incarcerated?
A. None, because I don't know where they're at. They don't give me no address. You know, Leslie keeps me in contact. She tells me how they're doing, and oftentimes, I can write her and let her know, hey, say hi to my sons, you know. But as far as me actually having contact, I've had none.
    Maybe about two or three years ago, some counselors come up here and they were talking about giving me an opportunity to maybe see them, but they denied it because of the fact I've been incarcerated.
Q. Okay. [Father], I'm not just talking about when they were in foster care this time. Since you have been incarcerated, have you seen your children at all?
A. No, ma'am. I have not.

Mother has not appealed the termination of her parental rights; consequently, to the extent she served as the source of information regarding the children, she will no longer be able to do so.

family services worker testified that the children were doing well in the pre-adoptive home and that their needs were being met. Tenn. Code Ann. § 36-1-113(i)(5).

The evidence clearly and convincingly shows that termination of Father's parental rights is in Children's best interest as set out in Tenn. Code Ann. § 36-1-113(i).

## CONCLUSION

For the foregoing reasons, the order terminating Father's parental rights is affirmed.

_____
RICHARD H. DINKINS, JUDGE